UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TAMMY B.,

                    Plaintiff,

        v.

ANDREW SAUL,[1]

                    Defendant.

Case No. 18-cv-07701-SI

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Docket Nos. 15, 23, 28

The parties have filed cross-motions for summary judgment in this Social Security appeal. Docket Nos. 15, 23, 28.  Having considered the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment.  The matter is REMANDED for immediate payment of benefits.

**BACKGROUND**

**I.    Procedural History**

In February 2015, plaintiff Tammy B. applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2]  Administrative Record ("AR") at 167, 169, 171.  She alleged a disability onset date of August 5, 2014. *Id*. at 77.  Her application was denied initially and upon reconsideration. *Id*. at 22.  Plaintiff's application was then heard by Administrative Law Judge

---

[1] Andrew Saul, Commissioner of Social Security, is substituted for his predecessor, Nancy A. Berryhill, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The Court partially redacts plaintiff's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See also* Fed. R. Civ. P. 5.2(c)(2)(B).

("ALJ") C. Tompkin on February 23, 2017. *Id.* The ALJ heard testimony from plaintiff and from vocational expert ("VE") Linda Ferra. *Id.* The ALJ denied plaintiff's claim in a decision dated August 29, 2017. *Id.* at 31.

The Appeals Council denied review of plaintiff's claims on August 2, 2018, rendering ALJ Tompkin's denial the final decision of the Commissioner. *Id.* at 1-4. In denying review, the Appeals Council also considered new evidence submitted by plaintiff but found the new evidence did not show a reasonable probability that it would change the outcome of the ALJ's decision. *Id.* at 2.

On December 24, 2018, plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. After plaintiff moved for summary judgment, Dkt. No. 15 ("Pl.'s Mot."), the parties stipulated to an extension of time for defendant to file a supplemental certified administrative record, explaining that "the Appeals Council erroneously declined to include and exhibit supplemental evidence submitted by Plaintiff in conjunction with her request for Appeals Council review." Dkt. No. 20. In July 2019, defendant filed a supplemental certified administrative record. Dkt. No. 22 ("SAR"). On September 10, 2019, plaintiff filed a supplemental motion for summary judgment. Dkt. No. 23 ("Pl.'s Suppl. Mot."). Defendant filed a cross-motion for summary judgment on November 18, 2019. Dkt. No. 28 ("Def.'s Cross-Mot."). Briefing was completed when plaintiff filed a reply brief on November 29, 2019. *See* Dkt. No. 29.

## II.    Medical and Personal History

At the time of the administrative hearing, plaintiff Tammy B. was a forty-six-year-old woman with at least a high school education. AR at 30, 77, 80. Her past work experience included maintenance janitorial work at a steel decking company, where she was still employed at the time of her accident. *Id.* at 46, 203-04. She also previously worked as a program manager for adult care, kitchen help at a school, and cashier for a retail corporation. *Id.* at 203-07.

On August 5, 2014, plaintiff sustained an injury when she fell into a manhole. *Id.* at 407, 466. She has not engaged in substantial gainful activity since then. *Id.* at 24. On February 4, 2015, plaintiff applied for disability benefits due to her suffering from partial seizures, a herniated disk in her neck, blackouts, an inability to lift, and an inability to walk far distances. *Id.* at 77, 89, 190.

United States District Court
Northern District of California

### III.    Medical and Vocational Evidence

Plaintiff's medical records include numerous progress notes from plaintiff's medical appointments.  The record includes treatment notes from plaintiff's various office visits to her primary care physician, Randolph Clarke, M.D.  *Id.* at 442-84.  In November 2014, plaintiff began seeing Navjeet Boparai, M.D., for pain management and received multiple cervical epidural steroid injections.  *Id.* at 388-92, 461.  The record also includes treatment notes and a seizure disorder form from neurologist Negar Sodeifi, M.D., who began treating plaintiff in December 2014 for changes in speech and potential seizure activity.  *Id.* at 302-17, 486-88.  In May 2015, plaintiff was admitted overnight to the hospital at John Muir Medical Center for seizure precautions.  *Id.* at 491-504.  The record includes a medical source statement completed by Kimford J. Meador, M.D., in June 2015, diagnosing plaintiff with focal epilepsy and spondylosis with neck and back pain.  *Id.* at 565.  The record also includes pre- and post-op treatment notes from plaintiff's November 2016 C5-6 fusion surgery (neck surgery) by Steven Lee, M.D.  *Id.* at 568, 570.

### A.    Treating Physicians

On August 13, 2014, plaintiff saw Dr. Clarke, her primary care provider, for her injuries from the manhole incident.  *Id.* at 466.  Dr. Clarke diagnosed plaintiff with chronic lumbar disc disease and chronic pain syndrome.  *Id.*  On September 2, 2014, plaintiff saw Dr. Clarke again for neck and shoulder pain, lack of sleep due to physical discomfort, and inability to clean or do housework.  *Id.* at 463.  Dr. Clarke certified plaintiff for disability from her job for a six-week period.  *Id.*  On October 16, 2014, plaintiff saw Dr. Clarke for severe pain in her neck and shoulder.  *Id.* at 461.  On this date, Dr. Clarke diagnosed plaintiff with cervical disc disease.  *Id.*  Additionally, on February 4, 2015, plaintiff visited Dr. Clarke for a disability extension due to her ongoing injuries including cervical spine injury and ongoing seizure disorder.  *Id.* at 450.  Dr. Clarke stated that plaintiff's disability status includes "chronic pain with significant medications, which involve side effects as well as limitation of function related to cervical spine injury and antiseizure medications."  *Id.*  Dr. Clarke explained plaintiff "is unable to perform the usual functions in her employment and

will remain so likely into the operative and postoperative.  Likely to last upper is a one year [sic].  At this time we will certify her disability for a period of 90 days and will transfer her case to her operating surgeon thereafter."  *Id.*  Dr. Clarke stated that Dr. Boparai would take over when the three-month extension expired.  *Id.*

Since November 7, 2014, plaintiff had also been seeing Dr. Boparai for pain management for neck pain.  *Id.* at 406.  Plaintiff saw Dr. Boparai on a roughly monthly basis from November 2014 through May 2015.  *Id.* at 522.  On December 3, 2014, Dr. Boparai performed a C6-7 cervical epidural steroid injection procedure on plaintiff to relieve pain from her cervical disc disease.  *Id.* at 388.  Dr. Boparai performed the same procedure on plaintiff two more times, in February 2015 and May 2015.  *Id.* at 362, 555.  Dr. Boparai noted that plaintiff has limitations in reaching, handling, or fingering because of weakness in her left wrist and sensory impairments over her right hand.  *Id.* at 523.  Dr. Boparai explained these limitations would affect plaintiff's ability to lift and/or carry.  *Id.*  In Dr. Boparai's June 4, 2015 medical source statement, she determined plaintiff could lift a maximum of five pounds both occasionally and frequently.  *Id.* at 526.  Plaintiff's last documented visit with Dr. Boparai was July 31, 2015.  *Id.* at 537.  Dr. Boparai noted that the July 31, 2015 visit would be plaintiff's last visit on her current insurance because plaintiff was let go from her job.  *Id.* at 541.

Plaintiff also began seeing neurologist Dr. Sodeifi in December 2014 for treatment for speech changes.  *Id.* at 302.  Unclear of the causes of her speech change, Dr. Sodeifi ordered an electroencephalogram ("EEG").  *Id.* at 318.  The EEG results showed abnormalities.  *Id.*  In January 2015, Dr. Sodeifi placed plaintiff on Keppra, an antiepileptic drug, for her spells and seizure symptoms.  *Id.* at 307.  Plaintiff returned to Dr. Sodeifi in March 2015 to address continued spells of confusion and seizure symptoms.  *Id.* at 313-17.  Dr. Sodeifi increased plaintiff's Keppra dosage and referred her to epilepsy monitoring at Stanford for clarification and observation of her spells.  *Id.* at 316.  In May 2015, Dr. Sodeifi completed a Seizure Disorder form.  *Id.* at 486-88.  Dr. Sodeifi noted in the form that plaintiff's seizure onset date was "at least since December 2014."  *Id.* at 486.  In the form, Dr. Sodeifi described plaintiff's typical seizure as "episodes of speech difficulty, losing track of time and spacing out," and said that these seizures initially occurred "one to two times per

United States District Court
Northern District of California

4

day," but as of May 2015 were occurring two times a week. *Id.* Dr. Sodeifi diagnosed plaintiff with complex partial seizures based on plaintiff's medical reports and EEG report. *Id*. at 486.

In June 2015, plaintiff visited Dr. Meador at the Stanford Comprehensive Epilepsy Center for an initial patient evaluation. *Id.* at 533. Dr. Meador completed a medical source statement and noted plaintiff's diagnoses included focal epilepsy and spondylosis with neck and back pain. *Id.* at 565.

In October 2016, Dr. Lee performed a physical examination of plaintiff and recommended a C5-6 fusion to alleviate plaintiff's neck pain resulting from her initial injury. *Id.* at 574. On November 16, 2016, plaintiff underwent the recommended C5-6 neck surgery. *Id*. at 570. During plaintiff's second post-op visit, plaintiff stated her neck pain had improved; however, she complained of right shoulder pain. *Id*. at 568. In January 2017, plaintiff received an MRI on her right shoulder. *Id.* at 603.

### B.      Reviewing Physicians

In May 2015, medical consultant C. Eskander, M.D., rendered an opinion as part of the Social Security Agency ("SSA") initial review of plaintiff's disability application. *Id.* at 86. Dr. Eskander reviewed medical records from plaintiff's medical appointments with various doctors from August 2014 through April 2015. *Id*. at 80-81. In assessing plaintiff's physical residual functional capacity, Dr. Eskander determined that plaintiff should never climb ladders, ropes, and scaffolds. *Id.* at 83. Dr. Eskander found plaintiff had postural limitations when reaching overhead on the left side. *Id*. at 84. Dr. Eskander also found plaintiff should avoid even moderate exposure to hazards (machinery, heights, etc.). *Id*.

In July 2015, medical consultant M. Sohn, M.D., rendered an opinion as part of the SSA's reconsideration review of plaintiff's disability application. *Id.* at 100. Dr. Sohn reviewed the initial medical evidence and new evidence from an initial patient evaluation done at Stanford Hospital in June 2015. *Id*. at 94. In reassessing plaintiff's physical residual functional capacity, Dr. Sohn's opinion mirrored the limitations found by Dr. Eskander, except that Dr. Sohn found plaintiff could occasionally climb ladders, ropes, and scaffolds and that she was limited in reaching overhead on

United States District Court
Northern District of California

5

1

both the left and right sides.  *See id*. at 96.

2

3          **C.      Vocational Expert Testimony**

4          Vocational expert Linda Ferra (the "VE") testified at the ALJ hearing.  The VE described

5   plaintiff's past work, classified as a janitor, as "medium work."  *Id.* at 67.  The ALJ's first

6   hypothetical question asked if plaintiff's past work could be performed by an individual of plaintiff's

7   age, education, and work experience who is able to perform light exertion work activities, and with

8   the following limitations: "lift and carry twenty pounds occasionally and ten pounds frequently,"

9   "sit for six hours or stand/walk for six hours in an eight-hour work day," "frequently reach overhead

10  bilaterally," "occasionally climb ladders," "frequently balance, kneel, stoop, etc.," while avoiding

11  hazardous work conditions.  *Id*. at 68.  The VE testified that a person with those limitations could

12  not perform plaintiff's past work but that at least three jobs meeting those criteria existed in

13  significant numbers in the national economy: housekeeping cleaner, fast food worker, and sales

14  attendant.  *Id*. at 69.  The ALJ further asked if the same individual could perform any unskilled

15  occupations, if that person were off task ten percent of the time and missed one day of work per

16  month.  *Id*. at 71.  The VE responded in the negative, explaining that "if a person is missing an

17  average of a day a month on a consistent basis, plus being off task ten percent of the time, those are

18  both a borderline limitation[;] to combine both of those it would exceed what would be considered

19  competitive employment."  *Id*. at 72.

20         The ALJ also asked about the individual from the first fact pattern, except that the individual

21  could lift and/or carry ten pounds occasionally, occasionally reach in all directions, and occasionally

22  handle, finger, and feel bilaterally with the upper extremity.  *Id*. at 69.  The VE responded that no

23  jobs are available given the profile and residual functional capacity of the individual described by

24  the ALJ in that hypothetical.  *Id*. at 69-70.

25

26         **D.      Additional Evidence**

27         In requesting review of the ALJ's decision before the Appeals Council, plaintiff submitted

28

a deposition of Veda Bhatt, M.D., dated November 9, 2017;[3] medical records accompanying the deposition of Dr. Bhatt, dated December 30, 2014, to July 24, 2017; and a letter from Dr. Sodeifi dated September 22, 2017.[4]  SAR at 632-752.  Dr. Bhatt testified that she began seeing plaintiff in the neurology clinic for epilepsy.  *Id*. at 639.  Dr. Bhatt provided medication treatment to plaintiff, including prescribing her Keppra and Lamotrigine.  *Id*. at 642.  Prior to seeing Dr. Bhatt, plaintiff was diagnosed with focal epilepsy with some non-epileptic spells.  *Id*. at 643.  Dr. Bhatt testified that plaintiff was not driving because of her spells and epilepsy and that her driver's license had been suspended or revoked.  *Id*. at 648-49.  In October 2018, Dr. Bhatt observed plaintiff having what Dr. Bhatt described as a "brain fog."  *Id*. at 664, 686.  Dr. Bhatt described this instance as plaintiff blanking out during conversation for approximately fifteen to twenty seconds and not recalling where the conversation left off.  *Id*. at 665.  Dr. Bhatt testified that this could have been either an epileptic or non-epileptic seizure.  *Id*.  The medical records also indicate that Dr. Bhatt was aware of plaintiff's chronic pain syndrome.  *Id*. at 730.  In a February 2016 treatment note, Dr. Bhatt indicated that plaintiff had been sleeping only two hours and that her seizures were occurring frequently, including at night.  *Id*. at 735.

The letter from Dr. Sodeifi states that he was plaintiff's treating neurologist up until May 2015.  He states that he "reported her to the DMV in 2/2015, based on the California DMV law, to stop driving since she had episodes of loss of consciousness and spacing out."  *Id*. at 725.  However, Dr. Sodeifi said he had "not been following her since 05/2015 as her insurance has changed."  *Id*.

The Appeals Council found that "this evidence [did] not show a reasonable probability that it would change the outcome of the [ALJ's] decision" and it denied plaintiff's request for review of the ALJ's decision.  *Id.* at 1-2.

---

[3] The deposition was taken in a separate civil suit in which plaintiff sued the City of Antioch and Contra Costa Water District.

[4] Plaintiff also submitted the June 4, 2015 medical source statement from Dr. Boparai. Because this evidence was already in the record, the Appeals Council did not exhibit this evidence. AR at 2.

United States District Court
Northern District of California

1

**LEGAL STANDARDS**

2

**I.      Standard of Review**

3

The Social Security Act authorizes judicial review of final decisions made by the

4

Commissioner. 42 U.S.C. § 405(g). Here, the decision of the ALJ stands as the final decision of

5

the Commissioner because the Appeals Council declined review. *Brewes v. Comm'r of Soc. Sec.*

6

*Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012). The Court may enter a judgment affirming,

7

modifying or reversing the decision of the Commissioner, with or without remanding the case for a

8

rehearing. 42 U.S.C. § 405(g).

9

Factual findings of the Commissioner are conclusive if supported by substantial evidence.

10

*Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001). The Court may set

11

aside the Commissioner's final decision when that decision is based on legal error or where the

12

findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v.*

13

*Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla

14

but less than a preponderance." *Id.* at 1098. Substantial evidence means "such relevant evidence

15

as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d

16

1104, 1110 (9th Cir. 2012) (internal quotation marks and citations omitted). To determine whether

17

substantial evidence exists, the Court must consider the record as a whole, weighing both evidence

18

that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at

19

1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision

20

should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

21

22

**II.     Disability Benefits**

23

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to

24

engage in any substantial gainful activity by reason of any medically determinable physical or

25

mental impairment which can be expected to result in death or which has lasted or can be expected

26

to last for a continuous period of not less than twelve months," and (2) the impairment is "of such

27

severity that he is not only unable to do his previous work but cannot, considering his age, education,

28

and work experience, engage in any other kind of substantial gainful work which exists in the

United States District Court
Northern District of California

8

national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B).  The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a).  The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five.  *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2. Is the claimant's impairment severe?  If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

> 5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(1).  To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work.  *Id.* §§ 404.1545(a)(4), 416.945(e).  The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record.  *Id.*  The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability.  *Id.*  In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could

reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

**ALJ'S DECISION**

At the February 2017 administrative hearing before the ALJ, plaintiff was represented by counsel.[5] AR at 39. The ALJ heard testimony from plaintiff as well as from VE Linda Ferra. *Id.* at 38. No medical expert testified.

On August 29, 2017, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Social Security Act from August 5, 2014, through the date of the decision. *Id.* at 31. In determining plaintiff's disability status, the ALJ applied the five-step disability analysis in accordance with 20 C.F.R. § 404.1520(a). *Id.* at 23. The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2019.[6] *Id.* at 24. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since August 5,

---

[5] Plaintiff has different counsel representing her in this appeal.

[6] The disability field report forms from the SSA indicate that plaintiff had a Date Last Insured of December 31, 2018. AR at 186, 233. Neither party contends that this discrepancy is material in this case. To qualify for DIB (Title II benefits), a claimant must be "fully insured," as defined at 42 U.S.C. § 414(a), and have sufficient quarters of coverage. *See* 42 U.S.C. § 423; 20 C.F.R. § 404.130(b). The claimant has the burden of proof to demonstrate that she was disabled prior to the date on which her disability insured status expired, referred to as the "Date Last Insured." *See Armstrong v. Comm'r of Soc. Sec. Admin.,* 160 F.3d 587, 589 (9th Cir. 1998) (citing 42 U.S.C. § 423(c)).

2014, the alleged onset date of plaintiff's disability.  *Id.*  At step two, the ALJ found that plaintiff suffered from the following severe impairments: cervical degenerative disc disease, lumbar degenerative disc disease, and complex partial seizures.  *Id.*  The ALJ determined that plaintiff's right shoulder impairment was non-severe.  *Id.* at 25.  At step three, the ALJ found that plaintiff's impairments or combination of impairments did not meet or medically equal the severity of any impairment in the Listing of Impairments, including Listings 1.04 (disorders of the spine) or 11.02 (seizure disorder).  *Id.*

Before proceeding to step four, the ALJ examined plaintiff's residual function capacity ("RFC").  *Id.*  In assessing the RFC, the ALJ evaluated plaintiff's testimony and the medical evidence and weighed the opinions of plaintiff's treating physicians and the agency non-examining physicians.  Specifically, the ALJ gave the "most weight" to the opinions of the state agency consultants Drs. Eskander and Sohn and treating physician Dr. Boparai because she found they were consistent with the medical records.  *Id.* at 28.  The ALJ gave "some weight" to the medical source statements of plaintiff's treating providers Drs. Clarke and Sodeifi, finding the vagueness of the opinions rendered them of limited utility.  *Id.* at 29.  The ALJ gave "little weight" to the opinion of Dr. Meador because she found it went beyond the limits of the treating relationship.  *Id.*  As to the plaintiff's own testimony, the ALJ found that plaintiff's testimony regarding the symptoms' severity was inconsistent with the evidence in the record.  *Id.* at 26.

In light of the above assessment, the ALJ found plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567,[7] with the following exceptions:

_____

[7] It appears the ALJ erroneously cited to 20 C.F.R. § 404.1567(a), which defines "sedentary work."  *See* AR at 25.  "Light work" is defined in the Social Security regulations at subsection (b):

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

United States District Court
Northern District of California

1

2
> [Plaintiff] can lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit each for six hours in an eight hour day with normal breaks; can frequently reach overhead bilaterally using her upper extremities; occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; the individual can frequently balance, stoop, kneel, crouch or crawl; should avoid concentrated exposure to workplace hazards such as unprotected heights and moving or heavy machinery; the individual would need to change position after sitting for two hours.

3

4

5

6
*Id.*

7
      Continuing to step four, the ALJ relied on testimony from the VE to find that plaintiff was

8
unable to perform "past relevant work."[8]  *Id.* at 29.  At step five, the ALJ also relied on testimony

9
from the VE to find that jobs existed in significant numbers in the national economy that plaintiff

10
could perform, and that therefore a finding of "not disabled" was appropriate.  *Id.* at 30-31.

11

12

**DISCUSSION**

13
      Plaintiff moves for summary judgment, seeking a determination that the ALJ's unfavorable

14
findings are erroneous.  Plaintiff argues that the Appeals Council erred by failing to provide reasons

15
for rejecting the opinion of treating physician Dr. Bhatt.  Pl.'s Suppl. Mot. at 2-4.  Second, she

16
contends the ALJ erred by failing to find her chronic pain syndrome to be a severe impairment.  Pl.'s

17
Mot. at 13-14.  Third, plaintiff states the ALJ erred in evaluating the medical opinion testimony,

18
particularly in rejecting the opinions of treating physicians Drs. Clarke, Boparai, Sodeifi, and

19
Meador.  *Id.* at 14-19.  Fourth, she contends the ALJ erred in discrediting plaintiff's testimony by

20
failing to provide specific, clear and convincing reasons based on substantial evidence in the record.

21
*Id.* at 19-21.  Plaintiff further argues that substantial evidence does not support the ALJ's findings

22
in assigning the RFC or at step five, by allegedly failing to take into account plaintiff's chronic pain

23
syndrome and basing it on a non-treating doctor opinion.  *Id.* at 21-22.  Plaintiff requests the Court

24
order a remand for an award of benefits or, in the alternative, remand for further administrative

25
proceedings.  *Id.* at 22-24.  Defendant contends that substantial evidence supports all of the ALJ's

26

27
      [8] "Past relevant work" means substantial gainful activity performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen

28
years or fifteen years prior to the alleged disability onset date. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

United States District Court
Northern District of California

findings and conclusions and that the ALJ's decision is free from reversible error.  Def.'s Cross-Mot. at 13.

## I.      Supplemental Record

As a threshold matter, the parties dispute whether this Court may properly review the Appeals Council denial.  When plaintiff sought review of the ALJ decision from the Appeals Council, she presented additional medical evidence from Dr. Bhatt and Dr. Sodeifi.  AR at 2.  The Appeals Council found the new evidence "[did] not show a reasonable probability that it would change the outcome of the decision."  *Id.*; *see also* 20 C.F.R. § 404.970(a) (eff. Jan. 17, 2017) ("The Appeals Council will review a case if-- . . . (5) . . . the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.").  Plaintiff now argues that "the Appeals Council committed legal error by failing to provide any reason for rejecting the opinion of treating physician Dr. Bhatt."  Pl.'s Suppl. Mot. at 2.  Defendant counters that "the Appeals Council's denial of plaintiff's request for review is not a final decision subject to judicial review."  Def.'s Cross-Mot. at 2.

If plaintiff is asking this Court to reverse the Appeals Council decision, then defendant is correct that the Court lacks jurisdiction to do so.  The Ninth Circuit has explained that when the Appeals Council denies a request for review of an ALJ decision, the Court "ha[s] no jurisdiction to review the Appeals Council's decision denying [plaintiff's] request for review.  That is, we may neither affirm nor reverse the Appeals Council's decision."  *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).  This is because the denial of review is a non-final agency action that makes the ALJ decision the final decision of the Commissioner.  *Id.*  The Ninth Circuit has further found that, when considering new evidence that was not before the ALJ, the Appeals Council is "'not required to make any particular evidentiary finding' when it reject[s]" that evidence.  *Id.* at 1232 (quoting *Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996), *superseded by regulation on other grounds*).

Nevertheless, the Court still considers the additional records submitted to the Appeals

13

1
2
3
4
5

Council.  In this circuit, "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."[9] *Brewes*, 682 F.3d at 1159-60.  As such, the Court incorporates its review of the newly submitted evidence into its analysis.

6
7

## II.        Severity of Chronic Pain Syndrome at Step Two

8
9
10
11
12
13
14

Plaintiff next challenges "the ALJ's failure to acknowledge [plaintiff's] chronic pain syndrome and to make any findings regarding the severity of this impairment" at step two of the five-step disability inquiry. Pl.'s Mot. at 13-14.  Even if this were error, any error was harmless. "Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)).  "It is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048-49.

15
16
17
18
19
20
21
22
23

Here, the ALJ found plaintiff to have several severe impairments at step two: cervical degenerative disc disease, lumbar degenerative disc disease, and complex partial seizures.  AR at 24.  Moreover, at the RFC stage, the ALJ considered medical records and testimony regarding plaintiff's allegations of pain, including findings upon physical examination and pain treatment offered and received.  *See id.* at 26-28 (discussing, *inter alia*, plaintiff's testimony that "she is disabled because of severe pain," Dr. Chang's referral for surgical management to address neck and back pain, and receipt of three cervical epidural steroid injections for pain relief).  Where step two is met, the five-step disability inquiry simply proceeds, as it did in this case.  Plaintiff was not harmed by the ALJ's failure to find her chronic pain syndrome severe at step two.

24
25

## III.       Medical Opinions

26
27
28

[9] As noted above, in this case the Appeals Council wrongly refused to exhibit the new evidence.  The parties remedied this error when they stipulated to the filing of a supplemental certified administrative record.  *See* Dkt. No. 22.

United States District Court
Northern District of California

1    Plaintiff argues the ALJ erred in evaluating medical opinion testimony, particularly

2    weighing the opinions of treating physicians Drs. Clarke, Boparai, Sodeifi, and Meador. Pl.'s Mot.

3    at 14-19. Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting

4    these opinions. *Id.* Plaintiff also argues the ALJ erred in favoring the opinions of non-examining

5    state agency physicians over plaintiff's treating providers.

6    In this circuit, courts distinguish among the opinions of three types of physicians: (1) treating

7    physicians who have an established relationship with the claimant; (2) examining physicians who

8    see the claimant but do not treat her; and (3) non-examining physicians who neither examine nor

9    treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a

10   treating physician should be given greater weight than that of an examining or non-examining

11   physician. *Id.* Similarly, an examining physician's opinion usually should be given more weight

12   than that of a physician who has not examined the claimant. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d

13   1194, 1198 (9th Cir. 2008).

14   For claims filed before March 27, 2017, such as plaintiff's, "[t]he medical opinion of a

15   claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by

16   medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

17   other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675

18   (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). As such, the ALJ must provide clear and

19   convincing reasons to reject the uncontradicted opinion of a treating or examining physician. *Lester*,

20   81 F.3d at 830. Even where a treating or examining physician's opinion is contradicted by another

21   physician's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons that

22   are supported by substantial evidence" in the record. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th

23   Cir. 2014); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This is so because, even when

24   contradicted, a treating or examining physician's opinion is still owed deference and will often be

25   'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'"

26   *Garrison*, 759 F.3d at 1012 (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

27   The "substantial evidence" standard requires an ALJ to "set[] out a detailed and thorough

28   summary of the facts and conflicting clinical evidence, stat[e] his interpretation thereof, and mak[e]

United States District Court
Northern District of California

15

findings." *Reddick*, 157 F.3d at 725.  Conclusory statements by the ALJ are insufficient; he "must

set forth [his or] her own interpretations and explain why they, rather than the doctors', are correct."

*Id.*  An ALJ errs if he "does not explicitly reject a medical opinion or set forth specific, legitimate

reasons for crediting one medical opinion over another[.]"  *Garrison*, 759 F.3d at 1012-13 (citing

*Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).

### A.    Dr. Clarke

Plaintiff argues that the ALJ erred when she attributed "some weight" to the opinion of Dr.

Clarke, plaintiff's primary care physician.  Pl.'s Mot. at 14-15.  Defendant argues that Dr. Clarke

"never stated what Plaintiff could still do despite her impairments, the essence of residual functional

capacity[,]" and so he argues that the ALJ properly evaluated this opinion.  Def.'s Cross-Mot. at 5.

Defendant also argues that Dr. Clarke improperly opined on plaintiff's disability, a determination

reserved to the Commissioner.  *See id.* at 6 (citing 20 C.F.R. § 404.1527(d)(1); *Hill v. Astrue*, 698

F.3d 1153, 1160 (9th Cir. 2012)).

The ALJ discussed Dr. Clarke's opinion as follows:

> The undersigned assigns some weight to the treating source statements of Drs. Clark
> [sic] and Sodeifi.  Dr. Clark [sic] has provided various work excuses indicating
> claimant cannot return to work at her customary janitorial job (Exhibits 6F at 9 and
> 10, and 7F at 2).  While the proposition that claimant cannot return to her medium to
> heavy past relevant work is consistent with the medical evidence of record, the
> undersigned cannot assign greater weight to these opinions because they lack any
> specific limitations.  Similarly, Dr. Sodeifi's treating source statement merely
> confirms claimant's diagnosis of complex partial seizures, but indicates no
> corresponding limitations (Exhibit 13F at 3-4).  The undersigned assigns only some
> weight to these opinions because their vagueness renders them of limited utility.

AR at 29.

The Court agrees with defendant that the ALJ did not commit error in the weight assigned

to Dr. Clarke's opinion.  *See* Def.'s Cross-Mot. at 6.  The ALJ assigned some weight because Dr.

Clarke's opinion lacked specific limitations.  AR at 29.  In certifying plaintiff for disability leave

from her then-current job doing maintenance janitorial work at a steel decking company, Dr. Clarke

was essentially finding that plaintiff could not perform her past relevant work.  The records of Dr.

Clarke that plaintiff cites do not indicate that plaintiff could not return to *any* employment but that

1    she could not return to "*her* employment."  *See* AR at 450 (emphasis added), 463; *see also* Pl.'s

2    Mot. at 14-15.  The ALJ reached this same conclusion at step four of the disability inquiry.  *See* AR

3    at 29.  The record contains no opinion from Dr. Clarke as to whether plaintiff could perform light

4    or sedentary work.  The Ninth Circuit has held that the ALJ need not provide "clear and convincing"

5    reasons for rejecting a treating doctor's report if the ALJ does not reject the treating doctor's

6    conclusions.  *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010).  Here, the ALJ

7    did not reject Dr. Clarke's opinion, but rather assigned it only "some weight" because the opinion

8    did not extend beyond stating that plaintiff could not return to her job, a conclusion the ALJ

9    accepted.  In this way, the ALJ did not err.

10

11          **B.    Dr. Boparai**

12          Plaintiff also argues the ALJ erred with regards to Dr. Boparai's opinion.  Pl.'s Mot. at 15.

13   In determining the RFC, the ALJ stated, in relevant part:

> The undersigned assigns most weight to the opinions of the State agency medical
> consultants and great weight to those of Dr. Boparai because they are consistent with
> the medical evidence of record. . . .  Dr. Boparai provided treating source statements
> confirming claimant's severe impairment and limiting her to light work with lifting
> limited to five pounds, frequent postural limitations, occasional bilateral
> manipulative limitations, and sit/stand option (Exhibits 9F at 1-4 and 10F at 1-3).
> While the medical evidence of record does not support his lifting and limitations, the
> undersigned has otherwise incorporated his opinions into the residual functional
> capacity statement, above.

19   AR at 28-29.

20          The Court finds the ALJ erred in several respects.  Although the ALJ stated that she gave

21   "great weight" to the opinion of Dr. Boparai, the ALJ rejected Dr. Boparai's assessment that plaintiff

22   could lift only five pounds.  Lifting a maximum of five pounds is not consistent with "light work,"

23   *see* n.7, *supra*, and the only reason the ALJ provided for rejecting this opinion was that "the medical

24   evidence of record does not support [Dr. Boparai's] lifting and limitations . . ."  *See* AR at 29.  This

25   is not a specific and legitimate reason to reject the opinion of a treating physician.  *See Garrison*,

26   759 F.3d at 1012-13 ("An ALJ errs when he rejects a medical opinion or assigns it little weight

27   while doing nothing more than . . . criticizing it with boilerplate language that fails to offer a

28   substantive basis for his conclusion.") (citing *Nguyen*, 100 F.3d at 1464).

1     Plaintiff also argues the ALJ was mistaken in stating that she incorporated Dr. Boparai's

2  opinion into the RFC assessment.  Pl.'s Mot. at 16; AR at 29.  The Court agrees.  Dr. Boparai noted

3  that plaintiff had weakness in her left wrist and sensory impairments over her right hand.  AR at

4  523.  Dr. Boparai concluded that plaintiff could crawl, reach in any direction, handle, finger, or feel

5  only occasionally, due to her cervical radiculopathy.  *Id.* at 526.  The ALJ, by contrast, found that

6  plaintiff could "frequently reach overhead bilaterally using her upper extremities" and "frequently

7  . . . crawl[.]"  *Id.* at 25.  The ALJ placed no limitations on plaintiff's ability to handle, finger, or feel.

8  *See id.*  Although the ALJ stated that she gave Dr. Boparai's opinion "great weight," this is belied

9  by the RFC assessment.  The ALJ rejected nearly all of the limitations that Dr. Boparai noted.  It is

10  thus unclear what of Dr. Boparai's opinion the ALJ "otherwise incorporated . . . into the residual

11  functional capacity statement, above."  *See id.* at 29.

12     Defendant argues the ALJ's reasoning is sufficient "when the entirety of the decision is read

13  in context."  Def.'s Cross-Mot at 7.  But the ALJ did not cite to any of the evidence that defendant

14  now cites for support, and the Ninth Circuit has routinely held that "we review only the reasons

15  provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon

16  which he did not rely."  *Garrison*, 759 F.3d at 1010; *see also Connett v. Barnhart*, 340 F.3d 871,

17  874 (9th Cir. 2003).  The Court finds the ALJ erred in not providing specific and legitimate reasons

18  for rejecting Dr. Boparai's opinion.

19

20     **C.     Dr. Sodeifi**

21     Plaintiff argues the ALJ wrongly rejected the opinion of her treating neurologist, Dr. Sodeifi.

22  Pl.'s Mot. at 17.  The ALJ gave this opinion "some weight," explaining that Dr. Sodeifi's "treating

23  source statement merely confirms claimant's diagnosis of complex partial seizures, but indicates no

24  corresponding limitations (Exhibit 13F at 3-4)."  AR at 29.  This explanation is neither specific and

25  legitimate nor supported by substantial evidence.  *See Garrison*, 759 F.3d at 1012.  As contrasted

26  with the opinion of Dr. Clarke, the Court finds that in this instance Dr. Sodeifi's failure to indicate

27  certain limitations, particularly where the SSA's seizure disorder form did not ask about those

28  limitations, is not a specific and legitimate reason to reject the opinion of a treating physician.

United States District Court
Northern District of California

1    In the seizure disorder form that Dr. Sodeifi completed, Dr. Sodeifi explained that plaintiff

2    had seizures initially one to two times per day and then, as of May 2015, around two times per week.

3    AR at 486.  These were "episodes of speech difficulty, losing track of time and spacing out."  *Id.*

4    Dr. Sodeifi stated that "[t]hese episodes can happen anytime during the day and patient is at risk for

5    injury or fall due to confusion."  *Id.* at 487.  The ALJ incorporated none of these limitations into the

6    RFC assessment, and some of the functions the ALJ deemed plaintiff could perform—such as

7    occasionally climbing ladders, ropes, and scaffolds—would are at odds with the abilities of someone

8    who is "at risk for injury or fall due to confusion."  *See id.* at 25, 487.

9    Additionally, the Court agrees with plaintiff that prior to rejecting the opinion of treating

10   neurologist Dr. Sodeifi, the ALJ should have applied the factors in 20 C.F.R. § 404.1527(c)(2)-(6).

11   For claims filed before March 27, 2017, Social Security regulations provide that, when a treating

12   source's opinions are not given controlling weight, an ALJ must apply the factors in 20 C.F.R.

13   § 404.1527(c)(2)(i)-(ii) (length of treatment relationship and the frequency of examination; nature

14   and extent of the treatment relationship) and (c)(3)-(6) ("supportability," consistency, specialization,

15   and other factors that tend to support or contradict the opinion) in determining how much weight to

16   give each opinion.  *Garrison*, 759 F.3d at 1012 n.11.  "Similarly, an ALJ may not simply reject a

17   treating physician's opinions on the ultimate issue of disability."  *Ghanim v. Colvin*, 763 F.3d 1154,

18   1161 (9th Cir. 2014) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001)).

19   Application of these factors, particularly when applied to a specialist opinion on his field of

20   specialty, and who had an established treatment relationship with the patient, may have altered the

21   weight the ALJ assigned to this opinion.

22   In rejecting the opinion of Dr. Sodeifi without providing specific and legitimate reasons

23   supported by substantial evidence in the record, and without applying the factors laid out in the

24   regulations, the ALJ erred.

25

26   **D.    Dr. Meador**

27   Plaintiff also asserts that the ALJ erred in failing to include in the RFC any of the limitations

28   that Dr. Meador identified.  Pl.'s Mot. at 17-18.  With regard to Dr. Meador, the ALJ stated:

United States District Court
Northern District of California

> The undersigned assigns little weight to the opinions of Dr. Meador. Dr. Meador opined claimant's seizures, neck, and back pain would be disabling because they would limit her to no more than two hours of standing and walking and two hours of sitting. However, Dr. Meador evaluated only claimant's seizures, which he indicates are not precipitated by exertion (Exhibit 13F at 2-4). Thus, Dr. Meador appears to base his extreme exertional limitations upon a condition he has not treated. Even Dr. Sodeifi, claimant's treating neurologist, declined to complete an exertional questionnaire, stating that assessing claimant's physical capacity was outside his specialty (Exhibit 2F at 2). Therefore, the undersigned assigns little weight to this opinion because it extends far beyond the limits of Dr. Meador's treatment relationship.

AR at 29.

Upon review of Dr. Meador's medical source statement, the Court cannot find that the ALJ erred in assigning little weight to this opinion. First, plaintiff argues that the ALJ failed to incorporate the following limitations: "that [plaintiff] needs to rest for one hour after a seizure, she cannot drive, she cannot work over heated elements, and she would be absent from work 3 days a month (AR 565-566)." Pl.'s Mot. at 18. However, the medical source statement contains only the observation that plaintiff needs to rest for one hour after a seizure. *See* AR at 565-67. Nowhere in Dr. Meador's three-page medical source statement does he opine on plaintiff's ability to drive or work over heated elements or on her absences from work. *See id.*

Second, the ALJ is correct that Dr. Meador indicated plaintiff's seizures were not precipitated by exertion. The questionnaire asked the doctor to indicate a patient's limitations in sitting, standing/walking, and lifting/carrying only if the doctor found that the seizures *were* precipitated by exertion. *See id.* at 566-67. It appears Dr. Meador thus completed this portion in error.

Third, the ALJ's failure to specifically enumerate each factor for weighing a treating physician's opinion as to Dr. Meador resulted only in harmless error. *See* 20 C.F.R. § 404.1527(c)(2)-(6). Here, the ALJ did address certain factors, such as the nature and extent of the treatment relationship, the doctor's area of specialty, and the supportability of the opinion. *See* AR at 29. The other factors do not weigh in plaintiff's favor. It appears that Dr. Meador saw plaintiff only twice, in June and November 2015, although the record contains only notes from the June 2015 visit. *See id.* at 535, 565. Thus, it does not appear that addressing the remaining factors, such as the length of the treatment relationship and the frequency of examination, would have changed the

ALJ's evaluation of Dr. Meador's opinion. The Court will not reverse a decision of the ALJ "for errors that are harmless." *See Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)).

In sum, the Court finds that the ALJ committed reversible error in discounting the opinions of treating physicians Dr. Boparai and Dr. Sodeifi, without providing specific and legitimate reasons supported by substantial evidence in the record.

## IV.    Plaintiff's Symptom Testimony

Plaintiff contends that the ALJ improperly discredited her testimony regarding symptom severity without providing specific, clear and convincing reasons supported by substantial evidence in the record. Pl.'s Mot. at 19-21.

The Ninth Circuit has established a two-step analysis for determining how to credit a claimant's symptom testimony:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . .
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).[10] If the ALJ finds the claimant's allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on

---

[10] Defendant disputes that the clear and convincing reasons standard applies to review of a claimant's subjective symptom testimony, though defendant acknowledges that this is the law of the Ninth Circuit. Def.'s Cross-Mot. at 9 n.5. The Ninth Circuit has repeatedly rejected defendant's position in recent years, reaffirming the continued validity of the clear and convincing reasons standard. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014)).

United States District Court
Northern District of California

permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (internal quotation marks and citation omitted).

At the first step of the credibility test, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" AR at 26. The ALJ cited no evidence of malingering. Moving to the second step, the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence[.]" *Id.* The ALJ found that the "medical evidence of record indicates claimant had only eight months of treatment for her seizures" and that "the medical evidence of record contains no record of treatment for [seizures] after June 2015." *Id.* For the same reason, the ALJ rejected plaintiff's claim that she can no longer drive because of her seizures. *Id.* In addition, the ALJ rejected plaintiff's testimony that she has short-term memory loss, that she is "constantly tired, but can't sleep," and that "three of [her] doctors suggested [she doesn't] live alone." *Id.* The ALJ found all of these statements either inconsistent with or not documented in the medical record. *Id.* The ALJ also rejected plaintiff's claim that she could lift no more than five pounds after her neck surgery, citing the fact that "the only limitation by claimant's orthopedic specialists subsequent to her surgery was to 'avoid heavy lifting,' (Exhibit 15F at 1)." *Id.*

The Court finds the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's symptom testimony regarding her severe pain and seizures. First, the ALJ discredited plaintiff's testimony regarding seizures, including allegations that she continued having two seizures per week that lasted for a "few minutes" and that left her "wiped out" afterwards. *Id.* The ALJ likewise rejected plaintiff's testimony that she no longer drives because of her seizures. *Id.* The ALJ found this testimony not credible because plaintiff "has not had treatment for these alleged symptoms since June 11, 2015." *Id.* The additional evidence submitted to the Appeals Council, however, shows this is not the case. Plaintiff had a change in health care providers in mid-2015 when her insurance changed. SAR at 725. She began seeing Dr. Bhatt at Contra Costa County for seizure treatment in December 2015 and saw Dr. Bhatt regularly through at least November 2017. *Id.* at 632, 638-39. The Court disagrees with defendant that the ALJ properly "drew a reasonable adverse inference from the lack of treatment over a nineteen month period." *See* Def.'s Cross-Mot.

United States District Court
Northern District of California

at 11.  The additional evidence clearly shows that plaintiff did continue receiving seizure treatment throughout the period in question, and so the rejection of plaintiff's testimony regarding her seizure disorder was not supported by clear and convincing reasons.  Moreover, with regard to driving, in February 2015, Dr. Sodeifi reported plaintiff to the DMV to have her stop driving due to "episodes of loss of consciousness and spacing out."  SAR at 725.  Dr. Bhatt noted that at one of their visits she reviewed "seizure safety" with plaintiff, which would have included a discussion of not driving.  *Id.* at 680-81, 743.

Nor was the ALJ's rejection of plaintiff's claim of short-term memory loss supported by substantial evidence.  The ALJ referred to "consistently normal" mental status examinations by Drs. Sodeifi and Meador.  AR at 26.  However, Dr. Bhatt, plaintiff's primary care practitioner from December 2015 on, cited plaintiff's "foggy memory" as one of the reasons Dr. Bhatt did not think plaintiff currently capable of working.  SAR at 672; *see also* SAR at 717 (opining that plaintiff has memory loss).

The ALJ also rejected plaintiff's testimony that "she is 'constantly tired, but can't sleep,'" finding that "the medical evidence of record contains no evidence to this effect."  AR at 26.  The Court finds this reason is not clear and convincing, where plaintiff reported poor sleep to numerous doctors over a period of years.  For instance, on September 2, 2014, at an office visit with Dr. Clarke, plaintiff told Dr. Clarke she slept three hours per night due to physical discomfort.  *Id.* at 463.  Treatment notes from a December 19, 2014 visit to Dr. Boparai state that plaintiff reported her "[q]uality of sleep is poor."  *Id.* at 373.  In February 2016, Dr. Bhatt indicated that plaintiff had only been sleeping for two hours and that her seizures were occurring frequently.  SAR at 735.  And her treating neurologists noted that plaintiff suffered seizures at nighttime as well as during the day.  AR at 486 (Dr. Sodeifi noting plaintiff has "nocturnal episodes, [in] which she wakes up with aching all over and confusion with no recall of actual event"), 533 (Dr. Meador noting plaintiff's seizures include "awakening at night with exhaustion, aching and confusion").

The Court determines, however, that there was no error where the ALJ found plaintiff's testimony that "three of my doctors suggested I don't live alone" was unsupported by the medical evidence.  *See* AR at 26.  Although the record contains statements from doctors that plaintiff was

23

afraid to be alone, the Court found no physician recommendations that she should not be left alone. Dr. Bhatt, for instance, testified in deposition that plaintiff was afraid to be left alone, and while Dr. Bhatt put in a request for her to receive some in-home support services to help with certain tasks, Dr. Bhatt did not think plaintiff was a candidate for 24-hour nursing care.  SAR at 672-74, 681-83. In her briefs, plaintiff cites to no evidence in the record outside of her own hearing testimony to support the assertion that multiple doctors recommended she not be alone.

Finally, the ALJ rejected plaintiff's testimony that she was limited to lifting no more than five pounds after her neck surgery, which occurred in November 2016.  AR at 26, 570.  The ALJ cited to a post-operative note from plaintiff's orthopedic specialists dated March 2, 2017, in which it was recommended that plaintiff "[a]void heavy lifting."  *Id.* at 595.  However, Dr. Bhatt, plaintiff's primary care physician who treated plaintiff before her neck surgery and for at least a year following the surgery, testified in November 2017 that "it would be hard for her to lift any significant amount of weight more than 15 pounds."  SAR at 690.  Dr. Bhatt also testified that the neck surgery had not succeeded in controlling plaintiff's pain.  *Id.* at 711.

In sum, the additional evidence from Dr. Bhatt that plaintiff submitted to the Appeals Council undercuts much of the reasoning the ALJ provided for rejecting plaintiff's symptom testimony.  "Remand is necessary where the material evidence gives rise to a 'reasonable possibility' that the new evidence might change the outcome of the administrative hearing."  *Borrelli v. Comm'r of Soc. Sec.*, 570 Fed. App'x 651, 652 (9th Cir. 2014) (vacating and remanding the decision of the Commissioner where the ALJ explicitly based his rejection of the plaintiff's pain testimony on the fact that there were no medical records after July 2008, and where plaintiff submitted such records to the Appeals Council) (quoting *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)).  Here, there is a reasonable possibility that the evidence noted above might change the outcome of the administrative hearing.  The evidence indicated that plaintiff was in fact treated for her seizure disorder past June 2015.  While the ALJ did not have the supplemental evidence when assessing plaintiff's symptom testimony, the Court must conclude that substantial evidence

does not support the ALJ's reasoning and so remand is warranted.[11]

## V.    Remedy

The remaining question is whether to remand this case for further administrative proceedings or for the immediate payment of benefits. Plaintiff seeks remand for an immediate award of benefits under the credit-as-true rule. Pl.'s Mot. at 22. The Ninth Circuit has explained that this remedy "was intended as a rare and prophylactic exception to the ordinary remand rule when there is no question that a finding of disability would be required" if the medical opinion or claimant's testimony were credited as true. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014)). Under the credit-as-true rule, the Court may order an immediate award of benefits if three conditions are met. First, the Court asks "whether the 'ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* (quoting *Garrison*, 759 F.3d at 1020). Second, the Court must "determine whether there are outstanding issues that must be resolved before a disability determination can be made, . . . and whether further administrative proceedings would be useful." *Id.* (citations and internal quotation marks omitted). Third, the Court then "credit[s] the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability." *Id.* (citing *Treichler*, 775 F.3d at 1101). Even when all three criteria are met, whether to make a direct award of benefits or remand for further proceedings is within the district court's discretion. *Id.* (citing *Treichler*, 775 F.3d at 1101). In rare instances, all three credit-as-true factors may be met but the record as a whole still leaves doubts as to whether the claimant is actually disabled. *Trevizo*, 871 F.3d at 683 n.11. In such instances, remand for further development of the record is warranted. *Id.*

Here, the Court has already found that the ALJ failed to provide legally sufficient reasons for discounting the medical opinions of Dr. Boparai and Dr. Sodeifi as well as the symptom

---

[11] Plaintiff further argues that the errors the ALJ made in weighing the treating physician testimony and the testimony of plaintiff necessarily led to flawed conclusions in the remaining steps of the disability inquiry. Pl.'s Mot. at 21-22. The Court agrees and addresses these errors in the section that follows.

testimony of plaintiff.  The Court further finds that there are no outstanding issues to resolve and that further administrative proceedings would not be useful.  The medical record in this case contains no significant gaps and consists of records with plaintiff's primary care physicians and treating neurologists dating from approximately one week after plaintiff's fall in August 2014 through the August 2017 ALJ decision date.  Plaintiff's treating practitioners met with her frequently and established relationships with her.  The Court also has the additional evidence submitted to the Appeals Council in the form of testimony and records from Dr. Bhatt.  The Court notes that the ALJ did not have the benefit of these records before her during the administrative hearing.  Nevertheless, this Court must consider those records "when reviewing the Commissioner's final decision for substantial evidence."  *See Brewes*, 682 F.3d at 1163.

Crediting the discredited testimony as true, the record as a whole leaves no doubt as to plaintiff's disability.  *See Leon*, 880 F.3d at 1045.  The medical evidence shows that plaintiff has been compliant with treatment, which includes multiple medications for pain management, at least three cervical epidural steroid injections, and neck surgery, and that these treatments have not alleviated her pain symptoms.  She has suffered seizures since December 2014 or earlier,[12] and has received treatment for her seizures from that time through at least November 2017, the date of the most recent medical records in this case.  Although the seizures initially occurred more frequently (up to several times per day), at the time of the hearing she continued to experience them approximately two times per week.  *See* AR at 57, 486; SAR at 713.

Plaintiff's treating physician Dr. Clarke placed her on disability from work through May 2015, when he transferred her case to Dr. Boparai.  AR at 450, 463.  Dr. Boparai, who saw plaintiff for pain management from November 2014 through July 2015, concluded that plaintiff could lift a maximum of five pounds both occasionally and frequently.  *Id*. at 526.  After plaintiff's insurance changed, she began seeing Dr. Bhatt, who practiced family medicine and neurology and who treated plaintiff for her epilepsy from December 2015 through at least November 2017.  SAR at 632, 638-39.  The additional records submitted to the Appeals Council include nearly three hours of

---

[12] Plaintiff testified at the hearing that her seizures began in October or November 2014.  AR at 54-55.

United States District Court
Northern District of California

deposition testimony from Dr. Bhatt in November 2017 in which she discussed her treatment relationship with plaintiff and her assessment of plaintiff's symptoms and functional limitations. *See id.* at 632-724. Dr. Bhatt testified that she had personally witnessed one of plaintiff's seizures.[13] She opined that she did not think plaintiff could currently work because "she is in a lot of pain, she has a foggy memory, and she is just very easily tearful, and I don't think that she's able to multitask with the regular things that people need to do to maintain a job. I don't think she's able to be in the public too easily." *Id.* at 672. Dr. Bhatt thought that plaintiff should not go on a ladder by herself and that "it would be hard for her to lift any significant amount of weight more than fifteen pounds." *Id.* at 680, 690. She opined that plaintiff would have a hard time concentrating and that she did not think plaintiff "would be able to maintain employment in the setting of how many breaks she would need in terms of her lack of concentration." *Id.* at 690. Dr. Bhatt also noted that plaintiff's neck surgery had not succeeded in controlling her pain. *Id.* at 711.

One of the primary reasons the ALJ cited for rejecting plaintiff's symptom testimony is that the ALJ believed plaintiff had not received treatment for her seizures after May 2015. AR at 26. The additional records submitted to the Appeals Council show that plaintiff did continue receiving regular care and treatment for her seizures and that as of November 2017 she was continuing to experience seizures "several" times per week. SAR at 713. Notably, defendant does not address Dr. Bhatt's testimony at all in his cross-motion.

The RFC that the ALJ assigned is inconsistent with the limitations described by plaintiff's treating physicians. Specifically, Dr. Boparai and Dr. Bhatt found plaintiff would be unable to lift twenty pounds, which is "occasionally" required for an RFC of light work. *See supra*, n.7; AR at 526; SAR at 690. The ALJ found that plaintiff could occasionally climb ladders, AR at 25, while Dr. Bhatt did not think she should climb ladders. *See* SAR at 680.

Additionally, the RFC that the ALJ assigned failed to incorporate even those limitations on which the treating and consulting doctors all agreed. For instance, plaintiff's treating physician Dr. Boparai found that plaintiff had cervical radiculopathy and could reach (extend hands and arms in

---

[13] At step three of the disability inquiry, the ALJ stated that plaintiff's seizures "have never been witnessed by a medical professional." AR at 25.

United States District Court
Northern District of California

1    any direction) on the left and right side only occasionally.  AR at 527.  The State agency consulting

2    physicians Dr. Eskander and Dr. Sohn found, respectively, that plaintiff had limited reaching to the

3    left overhead and to both the left and right overhead.  *Id.* at 84, 96.  Yet the ALJ determined plaintiff

4    could "frequently reach overhead bilaterally using her upper extremities," citing only that "EMGs

5    of her bilateral upper extremities were negative[.]"  *Id.* at 25, 29.  Likewise, the ALJ found that

6    plaintiff could occasionally climb ladders, ropes, and scaffolds even though Dr. Eskander, whose

7    opinion the ALJ gave the "most weight," said she should never engage in such activities.[14]  *See id.*

8    at 28, 83.  In short, the medical evidence of record, including those opinions that the ALJ asserts to

9    have credited, does not support the RFC that the ALJ assigned.

10          This led to error at the remaining steps of the disability inquiry.  At the hearing, the ALJ

11   asked the VE to:

12          Assume a hypothetical individual of claimant's age, education and work experience,
       who is able to perform light exertion work activities as defined in the Regulations.
13       The individual can lift and carry 20 pounds occasionally and ten pounds frequently.
       The individual can sit for six hours or stand or walk for six hours in an eight-hour
14       work day, with normal breaks.  The individual can frequently reach overhead
       bilaterally, using her upper extremities.  The individual can occasionally climb
15       ladders, ropes and scaffolds and frequently climb ramps and stairs.  The individual
       can frequently balance, kneel, stoop, crouch and crawl.  The individual should avoid
16       concentrated exposure to work place hazards such as unprotected heights and moving
       or heavy machinery.

17   AR at 68.  The VE testified that such a person could not perform any of plaintiff's past work.  *Id.* at

18   69.  The ALJ then asked if that same hypothetical individual could perform any other work in the

19   national economy.  *Id.*  The VE testified that this hypothetical individual could do the work of

20   "housekeeping cleaner, fast food worker, or sales attendant."  *Id.*  The ALJ relied on this part of the

21   VE's testimony at step five to conclude that plaintiff was not disabled.  *Id.* at 30-31.

22          The ALJ also asked if there were any unskilled occupations in the national economy for a

23   hypothetical individual with the same facts as in Hypothetical 1, "except the individual can lift

24   and/or carry ten pounds occasionally, and the individual can occasionally reach in all directions

25

26   ─────────────────────

27   [14] The ALJ explained the rejection of this opinion by stating that Dr. Eskander "assumed
     claimant's . . . seizure disorder had more severe symptoms" than what Dr. Sohn assessed at the
28   reconsideration stage.  AR at 29 (citing AR at 93-97).

bilaterally, and occasionally handle, finger and feel bilaterally with the upper extremity." *Id.* at 69. The VE testified that there were not. *Id.* The VE explained that the combination of "the only occasional handling, fingering and feeling, along with the sedentary work limitation, leaves no jobs."[15] *Id.* at 69-70. In response to further questioning from the ALJ, the VE also testified that there would be no jobs in the national economy for an individual who would be off task ten percent of the time and who would miss one day of work per month. *Id.* at 71-72.

Plaintiff argues the VE's testimony in response to the ALJ's hypothetical is unreliable. Pl.'s Mot. at 22. The Court agrees. "In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental,' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). "If the record does not support the assumptions in the hypothetical, the vocational expert's opinion has no evidentiary value." *Lewis v. Apfel*, 236 F.3d 503, 517 (9th Cir. 2001). Hypothetical questions posed to a vocational expert must include a claimant's subjective impairments unless the ALJ has clear and convincing reasons for discrediting the claimant's testimony. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984); *see also Thomas*, 278 F.3d at 959.

The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true. *See, e.g.*, *Garrison*, 759 F.3d at 1022; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988). In those cases the claimant's counsel presented an alternative hypothetical to the VE that included the claimant's limitations and RFC as described by medical opinion or the claimant's testimony. In each case the VE responded to that hypothetical by

---

[15] Social Security regulations define "sedentary work" as:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

saying that a person with those limitations would be disabled.  And in each case, the Court found that based on that evidence, the ALJ would be required to find the claimant disabled on remand if the improperly rejected evidence were credited as true.

So too here.  Plaintiff testified that she suffered seizures approximately two times per week.[16] AR at 57.  When she experiences a seizure, her muscles ache and she is shaking for two to three hours afterward.  *Id.* at 55-56.  She testified that she has short-term memory loss and that since her accident she sleeps two to three hours per night and then falls asleep in the afternoon for around half an hour.  *Id.* at 61-62.  Moreover, both the treating and consulting physicians found a number of limitations that were not accounted for in the ALJ's RFC finding.  As discussed above, these include limitations in bilateral reaching overhead, *see id.* at 84, 96, 527 (Drs. Eskander, Sohn, and Boparai), and limitations in carrying or lifting that are inconsistent with light work.  *See id.* at 526 (Dr. Boparai finding plaintiff could lift no more than five pounds in June 2015); SAR at 690 (Dr. Bhatt testifying in November 2017 that plaintiff would have difficulty lifting more than fifteen pounds).

The VE testified that someone of plaintiff's age, education, and work experience, who would be off task ten percent of the time and miss one day of work per month, would not find competitive employment.  AR at 71-72.  The VE also testified that someone of plaintiff's age, education, and work experience, who could lift and/or carry ten pounds occasionally, who could occasionally reach in all directions bilaterally, and who could occasionally handle, finger and feel bilaterally with the upper extremity—in other words, the physical limitations found by treating Drs. Boparai and Bhatt—would find no jobs in the national economy.  *See id.* at 69.

For all of the above reasons, the Court sees no basis for serious doubt in the record that plaintiff is disabled.  Moreover, remand for benefits is appropriate here where plaintiff first applied for benefits over five years ago and has already experienced lengthy, burdensome litigation.  *See Vertigan v. Halter*, 260 F.3d 1044, 1053 (9th Cir. 2001); *see also Lingenfelter*, 504 F.3d at 1041 (considering additional evidence submitted to the Appeals Council and reversing and remanding for an award of benefits where vocational expert testified that claimant's limitations would render him

_____

[16] She testified that she used to experience seizures three times per week, before she was put on seizure medication and prior to her neck surgery.  AR at 55.

unemployable); *Ramirez v. Shalala*, 8 F.3d 1449, 1455 (9th Cir. 1993) (reversing and remanding for an award of benefits based on new evidence submitted to the Appeals Council).

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate payment of benefits.

**IT IS SO ORDERED**.

Dated: April 20, 2020

_____
SUSAN ILLSTON
United States District Judge